## W. M. MAINORD v. W. C. HICKMAN.

Western Section, July 1, 1927.

Petition for Certiorari denied by Supreme Court, January 13, 1928.

1. **Contracts. Failure to insert contracting party's name in the heading of a contract held not to affect the contract.**
Where the parties used a form contract and defendant's name was inserted in the body of the contract in place of the name written therein, but the change was not made in the heading of the contract, held that this error did not affect the validity of the contract.

2. **Principal and agent. Representations of an agent can not bind a principal who has not employed the agent.**
Where an agent for a certain heating plant made representations to the plaintiff in order to get him to buy the heating plant, and thereafter and before plaintiff bought the plant, the company selling the plant was sold to a new company which did not employ the agent, held that the new company was not bound by the representations of the agent.

3. **Contracts. Party is presumed to sign contract with full knowledge of its contents.**
Where a contract provided that it contained all guaranties and warranties and all agreements between the parties, and had a note "read carefully before signing," held that a party signing the contract was bound by its terms for it is presumed that he read and knew what he was signing.

Appeal from Chancery Court, Madison County; Hon. T. C. Rye, Chancellor.

Affirmed.

Pearson & Hewgley, of Jackson, for appellant.

J. T. Rothrock, of Jackson, for appellee.

SENTER, J.　The complainant W. M. Mainord sued the defendant W. C. Hickman in the chancery court of Madison county, seeking to recover against the defendant the sum of $369.70 alleged to be due and owing by account for labor and materials furnished to the defendant, and also to recover the sum of $140, with interest and attorneys fees as the balance due and owing on a certain note

executed by defendant in the sum of $500 for the purchase and installation of an oil burning heating system.

The defendant filed an answer and cross-bill, denying that he was indebted to the complainant in any sum, and by way of recoupment and counterclaim alleged that there had been a breach of a written warranty with reference to oil burner heating system, and based this allegation on a certain letter written by one F. S. Sewell to the defendant on October 17, 1924. It was alleged in the answer and cross-bill that said S. S. Sewell was one of the owners and a partner in the operation of a plumbing business in the City of Jackson, conducted and operated under the firm name of City Plumbing Company in the City of Jackson; that when he began negotiating with said Sewell for the purchase of the oil burner heating system he did not know anyone else was connected with said City Plumbing Company; that said Sewell, in the course of the negotiations, addressed the letter, Exhibit A to the answer and cross-bill, to defendant, which letter is as follows:

"October 17, 1924.

"Mr. Will Hickman,
"City Lumber Co.,                                      .
"City.
"Dear Sir:

"I have gone very carefully into the details of heating your apartment, West Baltimore street, with our NoKol Automatic Oil Heating Equipment; and after careful consideration I am submitting enclosed bid.

"I find that the size boiler you have can be very successfully, satisfactorily, and efficiently heated with one of our NoKol, and do not hesitate to say that this equipment will give you the desired results in connection with your present heating plant.

"The past performance of this type of burner which we agree to install has proven a record of efficiency and material savings. This equipment, of course, is automatically controlled from a thermostat, and keeps the building heated to an even temperature. In the use of coal, as a fuel, you will no doubt appreciate that an average temperature of sixty-one degrees is normal; while with our NoKol equipment we raise the average to seventy degres, and maintain it by the use of the automatic feature connected with our equipment. You will also appreciate that you do away with the evils incident to the handling coal and the disposal of ashes, which I believe would particularly appeal to you as the handling of ashes presents rather a complex problem in your case. You will be able to keep your basement clean and tidy and make of it a very inviting place, using the space that would be used for coal

bin would make you a dandy laundry which all up to date apartments should have.

"The storage tank for the oil would be placed just outside of basement south side and would be installed conforming to the requirements of the building inspector, and the requirements of the National Board of Fire Underwriters.

"We are sure that if this equipment is installed in your apartment it will give you such nice results, and be entirely satisfactory in every respect. So sure are we of this that we have agreed in the bid submitted that the equipment be made absolutely satisfactory to you, or we shall take it out and refund your money and place your heating plant in the same condition in which we found it.

"We might say in this connection that the only alteration that we would make is to take out the grate bars and front bottom doors. We will be glad to give you any other information and data and will be pleased to hear from you.

"Our price on this outfit with a 1000 gallon tank is $740.

"(Give your order today so you can have one of the best heated homes in the city).

"Yours truly,
"City Plumbing Company, per S. F. Sewell."

The answer and cross-bill further alleges that it was upon the alleged warranty contained in the above letter that induced him to buy this oil burner system and equipment; that after the same was installed it was very unsatisfactory; was frequently out of adjustment, necessitating employing plumbers from time to time to regulate and adjust and fix it; that it did not operate successfully, and did not maintain an even temperature, and as a result he was put to considerable expense in paying plumbers bills, and suffered considerable inconvenience; that he paid $240 cash, and executed the note sued on for $500; that said note was hypothecated at a bank which held as an innocent holder and he therefore made payments on the note aggregating $360, as the note was then in the hands of an innocent holder. By way of recoupment and counterclaim set up in the answer and cross-bill, he seeks to have any amount owing by him on the account, and also the balance of the note, set off by his said claim.

The answer of complainant to the cross-bill denies that the heating equipment was sold and delivered to cross-complainant Hickman by the City Plumbing Company under and pursuant to the alleged written guaranty contained in the letter written by S. F. Sewell and hereinabove quoted; and further denies that said Sewell had any right or authority to bind complainant by making any statements or alleged warranties, and that he never authorized,

consented to or ratified the statements contained in said letter. Cross-defendant in his answer denies that cross-complainant Hickman relied upon the statements made in said letter, but on the contrary alleges that on December 8, 1924, on the date of the purchase of said NoKol Heating equipment, that the said W. C. Hickman signed a written statement or order, containing the following stipulation; "That this order is subject to the warranty and guaranty which is printed on the back thereof, and that it is the only warranty, guaranty, representation or inducement expressed or implied made by the seller or its agents to the purchaser."

And said answer further avers that said order or contract so signed by Hickman, dated December 8, 1924, contains the following statement: "That the above comprises the entire contract between the parties hereto, and that there is no verbal or other understanding or agreement between the purchaser and the seller except as is set forth herein."

The answer to the cross-bill further avers that cross-complainant Hickman used said equipment during the winter of its purchase, and that he made no complaint concerning it, and that no complaint was made until after cross-complainant had endeavored to persuade Hickman to pay the balance due and owing to him, and that Hickman then complained that the equipment was unsatisfactory; that upon said complaint being made cross-defendant, although under no obligation to do so, procured an expert from Memphis and they made an examination of the equipment and they found same to be in good condition. The answer to the cross-bill denies that the equipment was not in good condition and did not properly function; and denies that cross-complainant was entitled to have the relief sought by the cross-bill.

We deem it unnecessary to copy the order or contract dated October 8, 1924, but an examination of the same discloses that it contains the above quoted provisions, and on the reverse side or back of the instrument is contained the "sellers guarantee" referred to in the body of the order, which is as follows:

## "THE SELLER'S GUARANTEE

"The NoKol Heating Company agrees that so long as the purchaser shall use in the NoKol apparatus a fuel approved by the seller, the seller within one year from date of installation of the NoKol apparatus on the property of the purchaser, will replace at its expense any parts furnished with the apparatus found to be defective in material, or workmanship. The seller does not guarantee, however, any parts not furnished by the seller.

"The seller further agrees to respond promptly to any reasonable service call to make adjustments on said NoKol Automatic

Oil Burner for a period of one year from date of installation without charge to the purchaser.

"The seller also guarantees to install a burner of sufficient capacity to take care of the total tax of radiation, as indicated by the size and condition of the heating plant at the time of our engineer's inspection. Said tax to be determined by the formula adopted and used by the Masters Steamfitters Association.

"The seller further agrees to promptly refund the deposit in full if the installation is not approved by our engineering department."

The cause was heard by the Chancellor and a jury having been called for, certain issues of fact were made up under the direction of the Chancellor to be submitted to the jury. The cause was heard on oral evidence. At the conclusion of the evidence, the court announced that since there were no material issues of fact to be determined by the jury, the issues would be withdrawn from the jury and the jury dismissed. To this action of the court in withdrawing the issues from the jury and discharging the jury, both the complainant and defendant excepted.

Without reviewing the evidence, we concur in the finding of the facts as found by the Chancellor, and which finding of facts is incorporated in the decree, and is as follows:

"The facts as disclosed by the preponderance of the evidence, are: That at the time of the written proposition, or guarantee referred to, of date October 17, 1924, was mailed or delivered to the defendant, one S. F. Sewell, with whom defendant was negotiating for the purpose of the plant, and who signed 'City Plumbing Company' by him, was employed as foreman of said plumbing company, and the company at that time was owned and operated by N. B. Moore; that sometime after the date of said paper writing, to-wit, on the 8th day of December, 1924, defendant purchased said equipment or heating plant, at which time the defendant signed what complainant insists was the contract of purchase, which contract bears date of that day, and is in the nature of an order to the NoKol Heating Company for the equipment, and is signed by the City Plumbing Company as 'salesman,' by S. F. Sewell, Sr., and by W. C. Hickman as the 'purchaser,' Said paper writing is filed as exhibit to the answer of complainant to the cross-bill. At the time this paper was executed, and the purchase made, and the plant installed, the complainant was the sole owner of the City Plumbing Company, he having purchased same from N. B. Moore, and the said Sewell still occupied same position with the company as he did with Moore. But the proof shows, that the defendant Hickman, did not know that fact, nor did the complainant Mainord have any knowledge or information of the contents,

or the statements, contained in the paper writing of October 17, 1924, and in no way authorized or ratified the same.

"It is shown in the proof that at times the plant would not furnish sufficient heat to properly heat the building, and that complaint was made to Sewell, furthermore the defendant spent somewhere in the neighborhood of $40 in an effort to get the plant to perform its functions properly. However, the defendant continued to use the heater and in the meantime purchased another one of similar make for the purpose of heating water for the building, and this use of said equipment continued up until the time when defendants note was past due, and complainant was demanding payment of the balance due thereon, at which time the defendant took the equipment out, that is the burner, but left the tank, pipes, etc., as they had been installed.

"At this time, the said Sewell had left Jackson, Tennessee, and the proof discloses was in debt to the defendant in some amount and is still so indebted to him. There is no evidence of any notice other than the complaints above referred to, as to the failure of the plant to properly function. No request or demand that the same be made to function according to the terms as set out in the agreement of October 17, 1924; no offer to return the heater at any time, and no notice or request that the same be removed in accordance with the provisions of the letter of October 17, 1924."

The decree then recites: "Under this state of facts, the defendant is not entitled to recover any amount by reason of his cross-bill upon the purchase price of said heating plant or equipment, and said cross-bill is dismissed. The complainant will have a decree on the original bill for the amount due on the said account with interest from the date of the filing of the bill, and also a decree for $140, the balance due on said note, with interest from maturity, and ten per cent solicitors fees, as provided in said note," and a judgment is accordingly decreed for said amount.

From this decree the defendant and cross-complainant Hickman has appealed to this court, and has assigned numerous error.

We deem it unnecessary to set out and discuss the assignments of error separately. We are of the opinion that the record and the evidence support the finding of the facts as found by the Chancellor, and that by a preponderance of the proof contained in the record, the facts as found by the Chancellor are supported.

We are of the opinion that under these facts there is no error in the action of the learned Chancellor in denying the relief sought by the cross-bill and in dismissing the same. We do not attach any significance or importance to the fact that the order or contract signed by defendant Hickman of date December 8, 1924, was addressed to the NoKol Heating Company. This was a blank

form of contract, and in the body of the contract the words "No-Kol Heating Company" were stricken out, and the words "City Plumbing Company" written in. The contract was signed by City Plumbing Company by Sewell. Sewell was not in the employ of complainant at the time the letter was written by him of date October 17, 1924. He was the agent and manager of the City Plumbing Company when it was owned by N. B. Moore, and it was during this period, and while he was the agent and employee of Moore that he wrote the letter of October 17, 1924. When the sale was finally consummated on December 8, 1924, Hickman signed the contract, Exhibit 1 to the answer of cross-defendant, which contract contained the provision that the only guarantee or warranty was contained on the back of the instrument. The instrument stated that it comprised the entire contract between the parties, and that there was no verbal or other understanding or agreement between the purchaser and the seller except as set forth in said instrument. In the body of the contract and above the signatures, we find the following note: "Read carefully before signing. Execute the triplicate and sign all three copies. Make all payments by check or money order to the City Plumbing Company." There is nothing in the record to indicate that any fraudulent metho.· were employed to induce Hickman to sign the contract of dat December 8, 1924, and we must presume that he signed it with full knowledge of its contents. The provisions in the contract of December 8, 1924, are in direct conflict with the alleged guarantee contained in the letter written by Sewell of date October 17, 1924. The heating plant was not installed under the agreements or representations contained in the letter of October 17, 1924, but it was installed under the contract of December 8, 1924. As above stated, we do not think that the failure to strike out at the top of the order the name "NoKol Heating Company" is material. Hickman understood and knew that he was dealing with the City Plumbing Company, of Jackson, Tennessee, and the fact that the name "NoKol Heating Company" was stricken out in other portions of the body of the contract, and the name "City Plumbing Company" written in, and the further fact that when the respective parties to the contract signed the same, it was signed by the "City Plumbing Company" as the seller, and defendant Hickman as the purchaser, and the payments to be made to the City Plumbing Company, shows that the failure to strike out the words "No-Kol Heating Company" at the beginning of the contract and write in lieu thereof "City Plumbing Company" was a mere inadvertence.

It results that all assignments of error are overruled and the decree of the Chancellor is affirmed.

Judgment will be entered here in favor of complainant W. M. Mainord against W. C. Hickman and surety on the appeal bond for the amounts decreed by the Chancellor, with interest thereon from the date of said decree. Appellant and surety on the appeal bond will pay the costs of this appeal, and the cost of the cause.

Owen and Heiskell, JJ., concur.